# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**CRYSTAL ETIENNE,**

      **Plaintiff,**

**v.**                                                                    Case No: 6:16-cv-1251-Orl-40DCI

**THE DEVEREUX FOUNDATION, INC.,**

      **Defendant.**

## REPORT AND RECOMMENDATION

This cause comes before the Court for consideration without oral argument on the following motion:

> **MOTION:** PARTIES' JOINT MOTION AND MEMORANDUM OF LAW FOR APPROVAL OF SETTLEMENT AGREEMENT (Doc. 45)
>
> **FILED:** July 26, 2017
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

## I. BACKGROUND.

Plaintiff filed the operative complaint (the Complaint) against Defendant on October 28, 2016. Doc. 19. Plaintiff alleged that she worked for Defendant as a "Staffing Coordinator," and that her duties included, but were not limited to, "receiving calls from other employees when they were unable to come to work that day, [and] attempting to find other employees to cover for absent employees[.]" *Id*. at ¶¶ 6, 8. Plaintiff alleges that she worked in excess of 40 hours per week on numerous occasions, and that Defendant did not pay her overtime wages for all of the overtime work she performed. *Id*. at ¶ 15. Thus, Plaintiff asserted a single claim against Defendant for

unpaid overtime wages in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207. *Id.* at 3-4.

The parties reached a settlement in June 2017. Doc. 41.

The parties filed a Joint Motion and Memorandum of Law for Approval of Settlement Agreement (the Motion) and their settlement agreement (the Agreement) on July 26, 2017. Docs. 45; 45-1. The Agreement provides that Plaintiff will release her claim against Defendant, in exchange for receiving $6,250.00 in unpaid overtime wages, and $6,250.00 in liquidated damages. Doc. 45-1 at 1-2. The Agreement also provides that Plaintiff will receive $35,000.00 in attorney fees and costs. *Id*. The parties represent that the attorney fees and costs were "negotiated completely separately from Plaintiff's settlement and did not bear any weight on the amounts received by Plaintiff." Doc. 45 at 4. The parties maintain that the Agreement is fair and reasonable, and request that the Court grant the Motion and dismiss the Complaint with prejudice. *Id*. at 5.

## II. LAW.

The settlement of a claim for unpaid minimum or overtime wages under the FLSA may become enforceable by obtaining the Court's approval of the settlement agreement.[1] *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). The Court, before giving its approval, must scrutinize the settlement agreement to determine whether it is a fair and reasonable resolution of a bona fide dispute of plaintiff's FLSA claims. *See id*. at 1353-55. In doing so, the Court should consider the following nonexclusive factors:

- The existence of collusion behind the settlement.

---

[1] The settlement of a claim for unpaid minimum or overtime wages under the FLSA may also become enforceable by having the Secretary of Labor supervise the payment of unpaid wages. *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982).

- The complexity, expense, and likely duration of the litigation.
- The state of the proceedings and the amount of discovery completed.
- The probability of plaintiff's success on the merits.
- The range of possible recovery.
- The opinions of counsel.

*See Leverso v. SouthTrust Bank of Ala., Nat'l Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994). The Court may approve the settlement if it reflects a reasonable compromise of the FLSA claims that are actually in dispute. *See Lynn's Food Stores*, 679 F.2d at 1354. There is a strong presumption in favor of settlement. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).[2]

The Court, in addition to the foregoing factors, must also consider the reasonableness of the attorney fees to be paid pursuant to the settlement agreement "to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351-52 (11th Cir. 2009).[3] The parties may demonstrate the reasonableness of the attorney fees by either: 1) demonstrating the reasonableness of the proposed attorney fees using the lodestar method; or 2) representing that the parties agreed to plaintiff's attorney fees separately and without regard to the amount paid to settle plaintiff's FLSA claim. *See Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[3] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

### III. ANALYSIS.

#### A. Settlement Amount.

This case involves a dispute concerning the work Plaintiff performed while she was on-call. *See* Doc. 45 at 2-4. Plaintiff claims that she worked between 10 and 15 overtime hours per week while she was on-call, and that Defendant did not compensate her for that overtime work. *Id.* at 2-3. Defendant contests Plaintiff's claim that she worked 10 to 15 overtime hours per week, and claims that she was paid for every hour she worked. *Id.* at 2. Thus, this case involves disputed issues of liability under the FLSA, which constitutes a bona fide dispute. *See* Docs. 19; 22; 45.

The parties represent that they engaged in extensive discovery to determine the number of hours Plaintiff spent making and receiving work-related calls after leaving her office. The parties, for example, subpoenaed Plaintiff's phone records in an effort to determine the exact number of hours Plaintiff spent working after she left her office. Doc. 45 at 3. Defendant claimed that Plaintiff was owed somewhere between $3,423.50 and $6,847.00 in overtime wages applying the two-year statute of limitations, and somewhere between $6,981.90 and $13,700.60 in overtime wages applying the three-year statute of limitations. *Id.* Defendant further claimed that any violations of the FSLA were not willful. *Id.* Plaintiff agreed to compromise her claim after reviewing her phone records, the application of the "waiting to be engaged" doctrine,[4] and Defendant's alleged willfulness. *Id.* at 3-4.

The parties were represented by counsel throughout this case and engaged in numerous settlement negotiations. *Id.* at 2. The parties ultimately agreed to settle the case based on their

---

[4] The Supreme Court established the general parameters of the "waiting to be engaged" doctrine in *Armour & Co. v. Wantock*, 323 U.S. 126 (1944) and *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). The general rule emerging from those cases is that if the waiting time is spent primarily for the benefit of the employer, it is compensable. *Id.*

review of Plaintiff's telephone records and desire to avoid costs and the uncertainty of litigation. *Id*. at 2-4. Plaintiff agrees to release her claim against Defendant, in exchange for receiving $6,250.00 in unpaid overtime wages, and $6,250.00 in liquidated damages. Doc. 45-1 at 1-2. The undersigned finds this is a fair and reasonable compromise of Plaintiff's claim given the parties review of Plaintiff's phone records, the application of the "waiting to be engaged" doctrine, the issues with proving willfulness in this case, and the parties' desire to avoid the cost and uncertainty of continued litigation. Accordingly, it is **RECOMMENDED** that the Court find the amount of Plaintiff's settlement to be fair and reasonable.

### B.  The Release.

The Agreement contains two provisions addressing Plaintiff's release of claims. The first provision states that Plaintiff "agrees not to pursue any additional claim [against Defendant] based on alleged overtime or unpaid wages." Doc. 45-1 at 2. The second provision states:

> Etienne, on her own behalf, Etienne's descendants, dependents, heirs, executors, administrators, assigns, and successors fully, finally and forever releases and discharges Devereux from the Fair Labor Standards Act violations as alleged in her Complaint[.]

*Id*. The limited scope of this release allays any concern that Plaintiff may be giving up an unknown, but valuable, claim that is wholly unrelated to the wage claim at issue in this case. *See, e.g.*, *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346 (M.D. Fla. 2010); *see also Bright v. Mental Health Res. Ctr., Inc.*, Case No. 3:10-cv-427-J-37TEM, 2012 WL 868804 (M.D. Fla. Mar. 14, 2012). Therefore, the undersigned finds that the release does not affect the overall fairness and reasonableness of the settlement. Accordingly, it is **RECOMMENDED** that the Court find the release does not affect the fairness and reasonableness of the settlement.

### C. Anti-Disparagement Provision.

The Agreement contains a "Non-Disparagement" provision, which states:

> The Parties agree that they will not make or cause to be made any statements that disparage or damage the reputation of one another from the signing of this Agreement. Devereux agrees to only provide information regarding Etienne's dates of employment, positions held, and salary in response to written external inquiries unless otherwise required by law.

Doc. 45-1 at 3. The restriction contained in the first sentence the "Non-Disparagement" provision is often found to be unenforceable because it "contravene[s] FLSA policy and attempt[s] to limit Plaintiff's rights under the First Amendment." *Menjiva v. E & L Const. Serv. LLC*, Case No. 6:15-cv-2057-Orl-31KRS, 2015 WL 3485991, at *3 (M.D. Fla. June 2, 2015) (citing authority).[5] Thus, courts in this District routinely strike such provisions. *See, e.g.*, *Loven v. Occoquan Grp. Baldwin Park Corp.*, Case No. 6:14-cv-328-Orl-41TBS, 2014 WL 4639448, at *3 (M.D. Fla. Sept. 16, 2014). The parties provide no explanation why the provision does not affect the fairness and reasonableness of the settlement. *See* Doc. 45. Accordingly, it is **RECOMMENDED** that the first sentence of the "Non-Disparagement" provision be stricken.[6]

### D. Attorney Fees and Costs.

Plaintiff's counsel will receive a total of $35,000.00 in attorney fees and costs for representing Plaintiff in this case. Docs. 45 at 4; 45-1 at 1. The parties represent that the attorney fees and costs were "negotiated completely separately from Plaintiff's settlement and did not bear any weight on the amounts received by Plaintiff." Doc. 45 at 4. The settlement is reasonable to the extent previously discussed, and the parties' foregoing representation adequately establishes that the issue of attorney fees and costs was agreed upon separately and without regard to the

---

[5] The undersigned recognizes that the restriction is mutual, but this fact does not diminish the impact the restriction has on Plaintiff's speech.

[6] The Agreement's severability provision permits the Court to strike the first sentence of the "Non-Disparagement" provision without affecting the remainder of the Agreement. Doc. 45-1 at 4.

amount paid to Plaintiff.  *See Bonetti*, 715 F. Supp. 2d at 1228.  Accordingly, pursuant to *Bonetti*, it is **RECOMMENDED** that the Court find the amount of the attorney fees and costs to be fair and reasonable.

## IV. CONCLUSION.

Accordingly, it is **RECOMMENDED** that:

1. The Motion (Doc. 45) be **GRANTED**;

2. The first sentence of the Agreement's "Non-Disparagement" provision (Doc. 45-1 at 3) be **STRICKEN**;

3. The remainder of the Agreement (Doc. 45-1) be found to be a fair and reasonable settlement of Plaintiff's FLSA claim;

4. The case be **DISMISSED with prejudice**; and

5. The Clerk be directed to close the case.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on August 8, 2017.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy